UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JTH TAX, LLC, et al.,

        Plaintiffs,

v.                                          CIVIL NO. 2:20cv217

BABLU SHAHABUDDIN,

        Defendant.

**MEMORANDUM FINAL ORDER**

This matter comes before the court on the Defendant's Motion for Summary Judgment, filed on March 22, 2021, ECF No. 87, and the Plaintiffs' Motion for Summary Judgment, filed on April 29, 2021, ECF No. 107. On April 15, 2021, and May 20, 2021, respectively, these Motions were referred to United States Magistrate Judge Douglas E. Miller pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct necessary hearings and to submit to the undersigned district judge proposed findings and recommendations for the disposition of the Motions. ECF Nos. 106, 117.

The magistrate judge filed the Report and Recommendation ("R&R") on June 25, 2021. ECF No. 120. The R&R recommends granting the Defendant's Motion for Summary Judgment and denying the Plaintiffs' Motion for Summary Judgment. Id. By copy of the R&R, the parties were advised of their right to file written objections to the findings and recommendations made by the magistrate judge.

Id. at 33-34. On July 9, 2021, the Plaintiffs filed their objections. ECF No. 122. The Defendant filed a response on July 23, 2021. ECF No. 123. On July 29, 2021, the Plaintiff filed a reply. ECF No. 126; see ECF No. 127.

## I. Legal Standard

### A. Review of Magistrate Judge's R&R

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, must make a de novo determination of those portions of the R&R to which the parties have specifically objected. Fed. R. Civ. P. 72(b). For unchallenged portions, the court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 Advisory Committee's Note). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

### B. Motion for Summary Judgment

Summary judgment is appropriate when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).

A court should grant summary judgment if the nonmoving party has failed to establish, after adequate time for discovery, the existence of an essential element of that party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). At a minimum, the nonmoving party must present "evidence on which the [trier of fact] could reasonably find" for the nonmoving party. Anderson, 477 U.S. at 252. "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossingnol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris, Inc. v. Harshburger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

## II. Objections

The Plaintiffs object to the magistrate judge's recommendations that summary judgment be granted in favor of the Defendant as to (1) the Plaintiffs' breach of contract claim;[1] and (2) the Defendant's counterclaim for breach of contract. The court considers the Plaintiffs' objections in turn.

---

[1] The Complaint contains five (5) counts, all of which turn on the same alleged breach of contract. ECF No. 1. The counts are (1) breach of contract (specific performance); (2) breach of contract (monetary claim); (3) unjust enrichment; (4) request for preliminary injunction; and (5) request for permanent injunction. Id.

3

### A. Plaintiffs' Breach of Contract Claim

The Plaintiffs allege that the Defendant breached a Purchase and Sale Agreement ("PSA") executed by the parties on June 30, 2016. The contested provision of the PSA, paragraph 8(e), states, in relevant part:

> At [the Plaintiffs'] request, [the Defendant] shall seek the Lessor's consent to the assignment of certain office real estate leases connected with the operation of the Business to [the Plaintiffs] or its assignees as listed in Schedule C. Notwithstanding the forgoing, to the extent any leases associated with Business have not been assigned to [the Plaintiffs] and [the Plaintiffs] requests such assignment, [the Defendant] agrees to assign such leases to [the Plaintiffs] immediately.

ECF No. 99-9 at 5-6. In other words, the "Defendant agreed to sign over the leases to the properties subject to this litigation immediately upon [the] Plaintiffs' request." ECF No. 108 at 7.

On November 9, 2018, the parties entered into another contract, the Settlement Agreement. ECF No. 99-10. Paragraph 4(a) of the Settlement Agreement states, in pertinent part:

> This Agreement states the entire agreement amongst the Parties who have executed this Agreement and supersedes their prior agreements, negotiations or understandings, both oral and written, including [the PSA], except for [among other provisions, paragraph 8(e)], which Sections the parties hereby expressly agree shall survive execution of this Agreement and remain in full force and effect.

Id.

The Plaintiffs assert that the Defendant breached the PSA when he refused to assign leases to five (5) properties. ECF No.

4

108 at 6-11. The Defendant admits that he did not assign the leases in question, but he maintains that the Plaintiffs never demanded assignment of the leases and, even if they did, the Plaintiffs had already both expressly and impliedly waived their right to assignment of the leases. ECF No. 88 at 14-23.

To establish a breach of contract claim, the Plaintiffs must show that (1) the Defendant had a legally enforceable obligation; (2) the Defendant materially breached that obligation; and (3) the breach caused the Plaintiffs' damage. See Filak v. George, 594 S.E.2d 610, 614 (Va. 2004). The magistrate judge found that the Plaintiffs' claim failed on the first element because (1) the summary judgment record could not support a finding that the Plaintiffs ever requested assignment of the leases; and (2) even if the Plaintiffs did request assignment of the leases, the summary judgment record established as a matter of law that the Plaintiffs had already expressly and impliedly waived their right to assignment of the leases. R&R at 17-32. The magistrate judge found express waiver based on a series of emails between the parties in 2016 in which the Plaintiffs "repeatedly told [the Defendant] that they would not be taking [the leases] and replied affirmatively that he was free to dispose of such leases." Id. at 22. The magistrate judge found implied waiver based on the Plaintiffs' failure to request assignment of the leases until at least December of 2019, even though "the language of the PSA repeatedly reiterates

5

that . . . the assignment of the requested leases[] was to occur soon after the execution of the PSA in 2016." Id. at 27.

After a de novo review, the court finds no error in the magistrate judge's determinations that the undisputed facts establish, as a matter of law, that the Plaintiffs expressly and implicitly waived their right to assignment of the leases prior to December of 2019. The court therefore **OVERRULES** the Plaintiffs' objections as to the breach of contract claim and **ADOPTS AND APPROVES** in full the reasoning of the magistrate judge. The court adds two observations to the magistrate judge's thorough analysis.

### 1. Express Waiver

First, the Plaintiffs contend that they could not have expressly waived their right to assignment of the leases in 2016 because their right to demand assignment of the leases was "reinstated" in 2018 when the parties executed the Settlement Agreement. The Plaintiffs reason that the Settlement Agreement reinstated this right because the Settlement Agreement states that it supersedes all prior agreements between the parties <u>except for certain provisions of the PSA, including the provision of the PSA regarding assignment of leases</u>. ECF No. 122 at 14-16. The Defendant counters that the Settlement Agreement's merger clause did not create new contractual rights, but simply maintained the status quo as to the rights and obligations contained in the excepted provisions of the PSA. ECF No. 123. The Defendant therefore

6

concludes that the Settlement Agreement does not supersede the Plaintiffs' waiver. Id.

"A contract must be construed as written . . . ." Quadros & Assocs., P.C. v. City of Hampton, 597 S.E.2d 90, 93 (Va. 2004). "When contract terms are clear and unambiguous, a court must accord those terms their plain meaning." Id. The court concludes that paragraph 4(a) of the Settlement Agreement, by its plain terms, does not create new contractual rights and obligations. Where, as here, a merger clause in a contract contains exceptions, the purpose of the exceptions is merely "to prevent [a prior agreement] from being superseded by" the new contract. Drews Distrib., Inc. v. Silicon Gaming, Inc., 245 F.3d 347, 351 (4th Cir. 2001). That the parties intended this, and did not intend for the merger clause to create new rights and obligations, is clear from the Settlement Agreement's plain text, which says only that certain provisions of the PSA will "survive" execution of the Settlement Agreement. ECF No. 99-10. Accordingly, the Defendant never had an obligation under the terms of the Settlement Agreement to assign the leases at issue to the Plaintiffs.[2] Furthermore, the Plaintiffs' express waiver of their right to demand assignment of the leases was completed in 2016. The court finds that the Settlement Agreement,

---

[2] Notably, the Plaintiffs have always referred to the Defendant's purported breach of contract as a violation of the PSA, and not as a violation of the Settlement Agreement. See ECF Nos. 1 at 6-10; 99 at 11-14; 108 at 6-8.

7

executed in 2018, does not shed light on whether the Plaintiffs' actions several years earlier constituted an express waiver. Therefore, the court **OVERRULES** this objection to the R&R.

### 2. Retraction of Waiver

Second, the Plaintiffs argue that, even if they did waive their right to assignment of the leases, they retracted that waiver when they demanded the leases in December of 2019. To support this argument, the Plaintiffs cite Bristol Metals, LLC v. Messer, LLC, 498 F. Supp. 3d 840 (E.D. Va. 2020); Mun. Auth. Of Westmoreland City v. CNX Gas Co., 380 F. Supp. 3d 464 (W.D. Pa. 2019); Restatement (Second) of Contracts § 84 cmt. f (1981); and 13 Williston on Contracts, § 39.20 (4th ed. 2004). The cases cited by the Plaintiffs are district court cases applying § 2-209(5) of Pennsylvania's Uniform Commercial Code ("UCC"). See Bristol Metals, LLC, 498 F. Supp. 3d at 854-55; CNX Gas Co., 380 F. Supp. 3d at 470. Both Williston and the Restatement also cite to § 2-209(5) of the UCC as the primary authority on retraction of waiver. See Restatement (Second) of Contracts § 84 cmt. f; 13 Williston on Contracts, § 39.20. However, the Plaintiffs do not mention the analogous provision in Virginia's UCC, see Va.

8

Code § 8.2-209(5),[3] nor do they argue that Chapter Two of the UCC applies to this case.[4]

Based on the foregoing, the court finds the Plaintiffs' retraction argument to be inapplicable to the facts of this case. All of the sources cited by the Plaintiffs discussing retraction of waiver clearly contemplate a scenario much different from the one presented here. For example, in Bristol Metals, LLC, the parties had a contract for the periodic sale and delivery of industrial gases. 498 F. Supp. 3d at 845. The contract included a clause that limited price increases to two percent (2%) each year.

---

[3] This provision is identical to § 2-209(5) of the UCC, and reads: "A party who has made a waiver affecting an executory portion of the contract may retract the waiver by reasonable notification received by the other party that strict performance will be required of any term waived, unless the retraction would be unjust in view of a material change of position in reliance on the waiver." Va. Code § 8.2-209(5).

[4] Chapter Two of the UCC applies to "transactions in goods." Va. Code § 8.2-102. The sale of a business, as in the PSA, can be a contract for the sale of goods, if "the essential bulk of the assets to be transferred qualify as 'goods.'" De Filippo v. Ford Motor Co., 516 F.2d 1313, 1322-23 (3d Cir. 1975); see Va. Code § 8.2-105 (defining "goods"); see also Monarch Photo, Inc. v. Qualex, Inc., 935 F. Supp. 1028, 1033 (D. N.D. 1996) ("The UCC sales provisions will be applied to a sale of an ongoing business only if the essential element or nature of the contract is for the transfer of movable goods, and the transfer of items other than moveable goods, such as goodwill or realty, and the performance of other acts are merely incidental or secondary elements under the contract." (alteration omitted) (quotation marks omitted)). Here, the PSA does include the sale of movable goods, but also of intellectual property, goodwill, passwords, telephone numbers, franchises, permits, licenses, orders, registrations, certifications, variances, exemptions, leases, and subleases. ECF No. 99-9 at 15.

Id. The buyer did not enforce the price-escalation clause for several years, until it notified the seller that it would enforce the two percent (2%) cap going forward. See id. at 854. The seller asserted that the buyer had waived the provision and could not enforce it, but the court cited § 2-209(5) of the UCC to conclude that "a party who has waived an executory portion of a contract may retract that waiver [as to future transactions], absent a showing that such retraction will prove unjust in view of a material change of position by the other side." Id. at 856.

Other cases discussing retraction of waiver involve similar circumstances, i.e., where (1) the parties have a contract that entails ongoing obligations as between the parties, such as the periodic sale and delivery of goods; (2) for a period of time, one party declines to enforce a provision of the contract; and (3) that party thereafter informs the other party that it will require strict compliance with such provision as to all future transactions. See, e.g., CNX Gas Co., 380 F. Supp. 3d at 470-73; RBC Nice Bearings, Inc. v. SKF USA, Inc., 123 A.3d 417, 422-26 (Conn. 2015); Getty Terminals Corp. v. Coastal Oil N.E., Inc., 995 F.2d 372, 374-75 (2d Cir. 1993); Daniels v. Phila. Fair Housing Comm'n, 513 A.2d 501, 502-03 (Pa. Commw. Ct. 1986). The Plaintiffs have not identified any case applying the principle of retraction in a case not governed by Chapter Two of the UCC. Nor have the Plaintiffs cited any case applying retraction of waiver in a case

10

with facts similar to those presented here, where one party purports, years later, to retract its waiver of a right pursuant to a contractual provision that contemplates a discrete, one-time performance at a time close to the execution of the contract. Accordingly, the Plaintiffs have not established that their purported retraction in December of 2019 had any legal effect. For these reasons, the court **OVERRULES** this objection.

### B. Defendant's Counterclaim

Paragraph 1(c) of the Settlement Agreement requires the Plaintiffs to pay the Defendant "10% of the 2019 Net Revenue." ECF No. 99-9 at 3. In his counterclaim, the Defendant alleges that the Plaintiffs breached this provision of the Settlement Agreement by failing to pay him ten percent (10%) of the electronic filing fees that the Plaintiffs generated in 2019. ECF No. 88 at 7. The Plaintiffs argue that electronic filing fees are not "net revenue," as that term is used in the Settlement Agreement. ECF No. 99 at 21-22. The magistrate judge concluded that the Settlement Agreement unambiguously requires the Plaintiffs to pay the Defendant 10% of electronic filing fees as part of his share of net revenue. R&R at 32-34.

The court does not find the Plaintiffs' objections persuasive and concludes that the magistrate judge's plain reading of the Settlement Agreement is correct as a matter of law. As used in the Settlement Agreement, "net revenue" means "gross fees received

11

less all discounts, Cash-in-a-Flash, Send-a-Friend, and uncollected fees for the offices in the Territories." ECF No. 99-9 at 2. In calculating the payment owed to the Defendant, the Plaintiffs maintained a spreadsheet that calculates 2019 net revenue by deducting from "gross fees" all discounts, Cash-in-a-Flash, Send-a-Friend, and uncollected fees, <u>and electronic filing fees</u>. ECF No. 88-9 at 3. This is plainly contrary to the definition of net revenue, which allows deductions for discounts, Cash-in-a-Flash, Send-a-Friend, and uncollected fees, but not for electronic filing fees. The court will not effect a judicial modification of the Settlement Agreement to exclude electronic filing fees from the definition of net revenue.[5] See <u>Landmark HHH, LLC v. Gi Hwa Park</u>, 671 S.E.2d 143, 146 (Va. 2009). Accordingly, on a <u>de novo</u> review, the court **OVERRULES** the Plaintiffs' objection as to the Defendant's counterclaim.

### III. Conclusion

The court, having examined the Plaintiffs' objections to the R&R, and having made <u>de novo</u> findings and conclusions with respect thereto, **OVERRULES** the Plaintiffs' objections. The court **ADOPTS**

---

[5] The Plaintiffs also assert that electronic filing fees are not "gross fees . . . <u>for the offices in the territories</u>" because such fees were generated directly by the Plaintiffs, and not by the individual franchise locations. ECF No. 122 at 21-22. However, the Plaintiffs' own records belie that assertion, given that the Plaintiffs deducted electronic filing fees, among other expenses, from gross fees to calculate net revenue. ECF No. 88-9 at 3.

**AND APPROVES** the findings and recommendations set forth in the R&R filed on June 25, 2020, ECF No. 120, as supplemented in this Memorandum Final Order. The Defendant's Motion for Summary Judgment, ECF No. 87, is **GRANTED**. The Plaintiff's Motion for Summary Judgment, ECF No. 107, is **DENIED**. The Defendant's Motions in limine, ECF Nos. 83, 85, are **DISMISSED** as **MOOT**.

The Clerk is **DIRECTED** to enter judgment in favor of the Defendant on all of the Plaintiffs' claims and on the Defendant's counterclaim. The Clerk is further **DIRECTED** to send a copy of this Memorandum Final Order to counsel of record for the parties in this case.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

August 20, 2021

13